**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHERYL S. WARD ,

        **Plaintiff,**

-vs-                                              Case No. 6:05-cv-1500-Orl-19KRS

ORTHO BIOTECH PRODUCTS, L.P.
JOHNSON AND JOHNSON,

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law[1] (Doc. No. 37, filed Oct. 1, 2007);

2. Defendant's Notice of Filing Deposition Transcript of Cheryl Ward in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law[2] (Doc. No. 38, filed Oct. 1, 2007);

---

[1] Due to the voluminous nature of Defendants' record, the Court requested that it be delivered in paper form. Therefore, citations to Defendants' record are not always indicated with CM/ECF electronic docketing numbers.

[2] This deposition was taken on January 4, 2007 in a case that one of Plaintiff's co-workers brought for sexual harassment. (Doc. No. 38, p. 75). This deposition will be cited as "Ward 1, p. ___."

3. Defendant's Notice of Filing Deposition Transcript of Cheryl Ward in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law[3] (Doc. No. 39, filed Oct. 1, 2007);

4. Defendant's Notice of Filing Deposition Transcript of Craig Phillips in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law[4] (Doc. No. 40, filed Oct. 1, 2007);

5. Defendant's Notice of Filing Deposition Transcript of Jayan Palekar in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 41, filed Oct. 1, 2007);

6. Defendant's Notice of Filing Deposition Transcript of Leon Robinson in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law[5] (Doc. No. 42, filed Oct. 1, 2007);

7. Defendant's Notice of Filing Deposition Transcript of Susan Clarke-Johnson in Support of Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 43, filed Oct. 1, 2007); and

8. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 48, filed Nov. 5, 2007).

---

[3] This deposition was taken in three parts and will be cited as "Ward 2." (Doc. No. 39). Volume I was taken on August 16, 2007 and will be cited as "Ward 2.1, p. ___." (*Id.*) Volume II was taken on August 27, 2007 and will be cited as "Ward 2.2, p. ___." (*Id.*) Volume III was taken on September 7, 2007 and will be cited as "Ward 2.3, p. ___." (*Id.*)

[4] This deposition will be cited as "Phillips, p. ___."

[5] This deposition will be cited as "Robinson, p. ___."

**Background**

Defendant Ortho Biotech Products, L.P. is a wholly owned subsidiary of Defendant Johnson and Johnson.[6] (Doc. No. 37-2, ¶ 3). Defendants hired Plaintiff as a Senior Product Specialist for the Florida District on February 4, 2000. (*Id.* at ¶ 5). Plaintiff was responsible for marketing and selling the drug Procrit. (Ward 2.1, p. 171). Plaintiff Cheryl Ward was born on January 10, 1952. (Ward 2.1, p. 12). Before working for Defendants, Plaintiff owned and operated a company that sold medical equipment. (Ward 2.1, pp. 38-39).

Defendants' sales force for Procrit was organized into a hierarchical structure supervised by a Regional Business Director. (Phillips, p. 63). There were multiple District Managers who reported directly to the Regional Business Director. (*Id.*) The District Managers directly supervised the sales force consisting of the following three layers: (1) Product Specialists; (2) Senior Product Specialists; and (3) Territory Managers.[7] (*Id.*) Although Territory Managers reported to District Managers, the two positions were independent of each other in the line of progression.[8] (Phillips, p. 70).

During 2000, Defendants evaluated Plaintiff's performance as "competent." (Doc. No. 37-4, p. 2). During 2001, Plaintiff's performance improved, and she received a performance rating of seven out of ten, corresponding to "consistently exceeds job standards." (Doc. No. 37-5, pp. 4, 12).

---

[6] Defendant Ortho Biotech Products, L.P. and Defendant Johnson and Johnson do not distinguish themselves for the purposes of the instant motion. (Doc No. 37, p. 1). Therefore, the Court will treat them as one entity and refer to them collectively "Defendants."

[7] The position of Territory Manager did not exist within Plaintiff's business unit until some time after she was hired. (Phillips, p. 73).

[8] District Managers supervise the sales force and are selected through a competitive internal evaluation process. (Phillips, pp. 18-24); (Doc. No. 48-11, p. 1). Territory Managers are members of the sales force who meet certain criteria. (Doc. No. 48-12).

Plaintiff started expressing her belief that she was under-compensated in 2001 and mailed her Regional Business Director, Craig Phillips, a letter about her concerns. (Ward 2.1, p. 125, Ex 7). Plaintiff stated that she was underpaid based on her significant experience, strong performance, and willingness to assume additional job duties. (Ward 2.1, pp. 90-92, 125, Ex. 7). Plaintiff specifically requested a promotion to the position of Territory Manager to remedy this pay disparity. (Ward 2.1, pp. 91-92, Ex. 7). In May of 2002, Plaintiff reiterated her concerns and told Phillips that her District Manager, Leon Robinson, favored younger, male, minority sales representatives and gave them all of the opportunities for advancement. (Doc. No. 48-2, ¶ 5); *see also* (Ward 2.2, pp. 309-10). After mailing this letter and having the conversation with Phillips, Plaintiff lost responsibility for her additional duties. (*E.g.,* Ward 2.1, pp. 101-02). However, there is no evidence that Plaintiff's complaints detracted from her supervisor's perception of her overall performance, because she received the same score on her 2002 performance evaluation as in 2001. (Doc. No. 37-6, pp. 13).

In 2003, Plaintiff applied for a promotion. (Ward 2.1, p. 197, Ex. 18). She did not receive the job because it was given to someone more qualified. (Ward 2.1, p. 201; Doc. No. 37-7, p. 2). When Plaintiff did not receive the promotion, she again requested that she be promoted to Territory Manager or District Manager. (Doc. No. 37-7, p. 2)  In 2003, Plaintiff's performance evaluation declined to a five out of ten. (Doc. No. 37-8, pp. 2, 6). However, part of the decline in Plaintiff's performance was attributable to increased competition when a competitor launched a new drug. (*See* Robinson, pp. 46-47, 122). Despite her decreased performance, Plaintiff stated that she believed she should be promoted to Territory Manager. (Doc. No. 37-8, p. 5). In 2004, Defendants gave Plaintiff

a four out of ten on her performance review, which corresponded to "Performance meets most job standards, exceeds on few and missed some." (Doc. No. 37-14, pp. 2, 8).

In the spring of 2004, Plaintiff requested and received short term disability effective May 26, 2004. (Doc. No. 37-9). Plaintiff volunteered to work during the time she was on short term disability. (Ward 2.1, pp. 158, 169; Ward 2.2 p. 290). Plaintiff returned to work on July 22, 2004, but filed a second request for short term disability approximately one month later. (Ward 2.1 p. 169; Doc. No. 37-10). Plaintiff was granted short term disability from September 4, 2004 until March 8, 2005. (Doc. Nos. 37-10; 37-11). On or about February 14, 2005, Plaintiff applied for and received long term disability effective March 9, 2005, the day after her short term disability expired. (Doc. No. 37-12). Once Plaintiff was placed on long term disability, she was no longer considered an active employee under Defendants' policies. (Doc. No. 37-13, pp. 2, 4; *see also* Doc. No. 37-11, p. 4).

On March 15, 2007, a few days after she was placed on long term disability and inactive status, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Ward 2.1, Ex. 17). According to Plaintiff, the EEOC issued her right to sue letter on July 14, 2005. (Doc. No. 18, ¶ 10). Plaintiff filed her initial Complaint in this Court on October 7, 2005 and amended her Complaint on April 18, 2006. (Doc. Nos. 1, 18). Plaintiff's Amended Complaint asserts the following causes of action against Defendants: (1) sex discrimination/hostile work environment pursuant to Title VII; (2) retaliation pursuant to Title VII; (3) age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"); (4) disability discrimination pursuant to the Americans with Disabilities Act ("ADA"); (5) violation of Equal Pay Act, 29 U.S.C. §206(d); (6) sex discrimination and a hostile work environment pursuant

to the Florida Civil Rights Act ("FRCA"); (7) retaliation pursuant to the FRCA; (8) age discrimination pursuant to the FRCA; and (9) handicap discrimination pursuant to the FRCA. (Doc. No. 18).

Defendants move for summary judgment. (Doc. No. 37). Plaintiff filed a Memorandum in Response to Defendants' Motion. (Doc. No. 48). In her Response, Plaintiff admits that she no longer wishes to pursue her: (1) Title VII hostile work environment claim; (2) Title VII retaliation claim; (3) disability discrimination claims, (4) EPA claim; (5) "sex-based equal pay violation;" and (6) hostile work environment sex discrimination claims.[9] (Doc. No. 48, pp. 1-2). Therefore, Counts I, II, IV, V, VI and IX are dismissed. The remaining Counts of Plaintiff's Amended Complaint are: (1) Count III - age discrimination pursuant to the ADEA; (2) Count VII - retaliation pursuant to the FRCA; and (3) Count VIII - age discrimination pursuant to the FRCA.[10]

---

[9] Plaintiff offers no argument in opposition to Defendants' Motion for Summary Judgment with respect to hostile work environment sex discrimination, disability discrimination, or gender-based wage discrimination. (Doc. No. 48, pp. 1-2). Failure to oppose a dispositive motion raises an inference that the party does not object to such motion. *See, e.g., Freshwater v. Shiver*, Case No. 6:05-cv-756; 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005).

[10] Plaintiff alleges that she is pursuing an ADEA retaliation claim. (Doc. No. 48, p. 1). However, no such claim is included in Plaintiff's Amended Complaint. (Doc. No. 18). Plaintiff's Title VII retaliation claim alleges that she was retaliated against because she complained of "age-based harassment and discrimination." (*Id.* at ¶¶ 19-20). Plaintiff dropped her Title VII retaliation claim. (Doc. No. 48, pp. 1-2). Even if Plaintiff had not dropped this claim, age discrimination is not included within the scope of Title VII. 42 U.S.C. § 2000e-2(a)(1) (Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). Therefore, the Court will not consider any of Plaintiff's arguments with respect to ADEA retaliation.

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate when the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

**Analysis**

### III.  Counts III and VIII - Age Discrimination[11]

Plaintiff's Amended Complaint argues that Defendants failed to promote her to the positions of Territory Manager and District Manager despite the fact that she was more qualified than the younger applicants who received the positions. (Doc. No. 18, ¶¶ 23-24, 51-52).

In order to prevail on an age discrimination claim, a plaintiff must prove by a preponderance of the evidence that "age was a determining factor" in an employer's decision. *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). Where there is no direct evidence of discrimination, courts apply the same burden-shifting framework as Title VII claims. *Id.* First, an employee must establish a *prima facie* case of discrimination. *Id.* Once the employee establishes her *prima facie* case, there is an inference of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The employer's burden is merely one of production because the employee always bears the burden of proving discrimination by a preponderance of the evidence. *See id.* After the employer articulates a legitimate, nondiscriminatory reason for the action, the employee must prove that the reason is merely a pretext for discrimination. *Id.* An employee can only prevail if she introduces "significantly probative evidence" of pretext. *Id.* (citations omitted).

---

[11]  FCRA age discrimination claims are analyzed under the same framework as ADEA discrimination claims. *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997) (citing *Morrow v. Duval County School Bd.*, 514 So.2d 1086 (Fla.1987)). Therefore, the Court will analyze these two claims together.

In order to establish a prima facie case for failure to promote, a plaintiff must establish: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite those qualifications; and (4) someone equally or less qualified outside the protected class was promoted instead. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Defendants contend that Plaintiff cannot prove her *prima facie* case because she cannot show that she was qualified for the position of Territory Manager or applied for the position of District Manager. (Doc. No. 37, pp. 19-21). Therefore, Defendants only dispute the second element of Plaintiff's *prima facie*. (*See id.*) Defendants do not controvert any other elements of Plaintiff's *prima facie* case for the purposes of the instant motion. (*See id.*)

An employee's subjective belief that she is qualified for the position despite her failure to meet the employer's criteria is insufficient to establish her *prima facie* case. *See Collins v. Bd. of Trustees of Univ. of Ala.*, 211 Fed. Appx. 848, 850 (11th Cir. 2006); *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989) (plaintiff failed to show she was qualified when she did not meet all of the required criteria for promotion set forth in employer's handbook). However, there is a genuine issue of material fact whether Plaintiff was qualified for the Territory Manager Position.

According to Defendants, the qualifications for the Territory Manager position from 2000-2003, were "ten (10) years of pharmaceutical or medical sales experience or seven (7) years of Ortho Biotech sales experience and outstanding performance for a certain number of years." (Doc. No. 37-2, ¶ 7); *see also* (Doc. No. 48-12, p. 4 (Defendants' job description for the Territory Manager position listed the required qualifications as "Minimum ten years of pharmaceutical or medical sales experience or seven years of OBI sales experience with track record of consistent superior

performance.")).  Plaintiff's 2001 and 2002 performance reviews indicate that she was performing at an outstanding level.  (Doc. Nos. 37-5, 37-6).  Defendants contend that Plaintiff did not have the required sales experience because "medical sales experience required for the Territory Manager position refers to the sale of medical 'devices' to physicians . . . ."  (Doc. No. 37-2, ¶ 8).  Medical devices include items such as "pacemakers, joint replacements, insulin pumps, heart stints, surgical stapling and laparoscopic surgical instruments."  (*Id.*)

Plaintiff introduces specific facts to support a conclusion that she was qualified for the position of Territory Manager.  (*See, e.g.,* Ward 1, pp. 14-16; Doc. No. 48-2, ¶ 2).  Prior to working for Defendants, Plaintiff owned a company called "Respicare of Central Florida, Inc." from 1987 until 1997.  (Doc. No. 48-2, ¶ 2(b); Doc. No. 48-3, p. 2).  While working at Respicare, Plaintiff marketed and sold medical diagnostic equipment, such as oxygen, nebulizers, glucose monitors, other medical devices and various medications, to physicians for use in their offices.  (*Id.*)  Thus, Plaintiff has introduced evidence which could support a finding that she had the requisite sales experience for the Territory Manager Position.

For the purposes of deciding the instant motion, it is sufficient to find that Plaintiff has produced evidence which could support finding that she was qualified for the Territory Manager position.  Therefore, there is a genuine issue of material fact whether Plaintiff can establish a *prima facie* case of discriminatory failure to promote on the basis of age with respect to the Territory Manager position.  A strong *prima facie* case in combination with a fact finder's disbelief of an employer's proffered nondiscriminatory reason may be sufficient for an employee to prevail on an age discrimination claim.  *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1557 (11th Cir. 1995).

Therefore, Defendants' Motion for Summary Judgment with respect to Counts III and VIII must be denied.

## II.     Counts VII - FCRA Retaliation

The FCRA's anti-retaliation provision prohibits an employer from discriminating against an employee because the employee "has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section." Fla. Stat. § 760.10(7). The FCRA is interpreted in the same manner as Title VII, and precedent from Title VII is applicable to FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

Retaliation claims are analyzed under a burden-shifting framework. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). An employee must prove a *prima facie* case of retaliation. *Id.* A *prima facie* case requires an employee to prove that: (1) she was engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Id.* The causal link requirement is construed broadly, as all that is required is for the employee to show that the adverse action and the protected activity are not completely unrelated. *Id.* After the employee establishes her *prima facie* case, the employer may articulate a legitimate nondiscriminatory reason for the adverse action. *Id.* If the employer articulates such reason, the employee must prove by a preponderance of the evidence that the adverse action was merely a pretext for prohibited, retaliatory conduct. *Id.* The employer's burden is merely one of production, and the employee always bears the ultimate burden of proof. *Id.*

Defendants contend that all three elements of plaintiff's *prima facie* case are absent. (Doc. No. 37, pp. 14-18). However, Defendants' argument is not well taken.

The FCRA's anti-retaliation provision includes both a participation and an opposition clause. *Guess v. City of Miramar*, 889 So. 2d 840, 846 (Fla. 4th DCA 2004) (citing *EEOC v. Total Sys. Servs., Inc.*, 332 F.3d 1171, 1174 (11th Cir. 2000)); *see also* Fla. Stat. § 760.10. The participation clause protects an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." *Id.* An employee only qualifies for protection under the participation clause if the activities occur in conjunction with or after a formal charge.[12] *Id.* at 846-47. The opposition clause covers employees who have opposed unlawful practices. *Id.* at 847. This clause covers statements by employees about unlawful practices provided that the statement "refers to a specific practice of the employer that is allegedly unlawful." *Id.* Vague statements that do not include the specific activity the employee views as unlawful or state the name of the actor are not covered. *See id.*

In May of 2002, Plaintiff told her Regional Business Director, Craig Phillips, that her District Manager, Leon Robinson, "was favoring younger, newer sales representatives, especially black and Hispanic males, and younger females, and was giving them all the opportunity for advancement while ignoring the experience and accomplishments of the older, more experienced employees, including me." (Doc. No. 48-2, ¶ 5); *see also* (Ward 2.2, pp. 309-10). Therefore, there is a basis to conclude that Plaintiff engaged in statutorily protected conduct.

---

[12] Because Plaintiff did not file a formal charge until after she was placed on long term disability and inactive status, the FCRA's participation clause does not apply. (Ward 2.1, Ex. 17); *Guess v. City of Miramar*, 889 So. 2d 840, 846-47 (Fla. 4th DCA 2004).

An employer's act can be considered an adverse employment action if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) (internal quotation and citation omitted). In determining whether an employer's act is sufficient to support a retaliation claim, courts should focus on "the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position." *Id.* at 2416. Under certain circumstances the decision to take away an employee's additional responsibilities, which improve her career advancement potential, can be considered an adverse employment action for the purposes of a retaliation claim. *Id.* at 2415-16 ("But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.").

Prior to her conversation with Craig Phillips, Plaintiff served as "district trainer" and "reimbursement coordinator." (Doc. No. 48-2, ¶ 5); *see also* (Ward 2.1, Ex. 7 (noting that Plaintiff had been performing additional duties). Plaintiff testified that a few days after she complained to Craig Phillips, Leon Robinson took away her additional leadership duties. (Doc. No. 48-2, ¶ 5). Performing additional duties such as those mentioned could have helped Plaintiff qualify for a promotion. (*See, e.g.,* Phillips, pp. 18-30 (discussing the criteria for promotion and indicating that there was a subjective component which required supervisors to consider a candidate's performance, experience, business knowledge and ability to manage their administrative workload)). Thus, Plaintiff has introduced evidence to support finding an adverse employment action.

In order to prove the requisite causal connection, Plaintiff must show a connection between the adverse action and the protected activity. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). When assessing whether a plaintiff has proven a *prima facie* case, a "close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001). Because Plaintiff testified that she lost her additional job duties within days of complaining about Robinson's conduct, there is evidence to support finding that she can prove the requisite causal connection. (Doc. No. 48-2, ¶ 5). Therefore, Defendants' Motion for Summary Judgment with respect to Count VII must be denied.

## Conclusion

Based on the foregoing, the Court:

1. **DISMISSES** Counts I, II, IV, V, VI, IX; and

2. **DENIES** Defendants' Motion for Summary Judgment (Doc. No. 37) with respect to Counts III, VII and VIII.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 14, 2007.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record